# TERRE HAUTE & INDIANA RAILWAY COMPANY
## v. STRUBLE.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued November 14th, 1883.—Decided November 26th, 1883.

*Contract—Practice—Review.*

1. A railway company, in consideration of the undertakings of S. in a written agreement, agreed therein to send all live stock coming over its road to East St. Louis, to the stock yard of S. at that place, except such as should be specially ordered otherwise by shippers or owners, and to pay him therefor an agreed rate for loading and an agreed rate for unloading: *Held*, that this agreement applied to all live stock shipped in the ordinary course of the company's business over its road, the direction of which was not otherwise specially ordered by shippers, and which it was possible for the company to have loaded at the stock yard of S.; and, that on a breach on the part of the company being proved, without fault on the part of S., he could recover from the company damages in consequence of stock being sent by the company to another stock yard at that terminus.
2. The action of the court below in denying a motion for a new trial is not subject to review.

Action on a written contract under seal to recover damages from the railway company for a breach. The essential facts appear in the opinion of the court.

*Mr. John G. Williams* for the plaintiffs in error.
*Mr. Jefferson Chandler* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought by Struble, the defendant in error, to recover damages for an alleged breach of a written contract entered into between him and the Terre Haute and Indianapolis Railroad Company. A verdict and judgment were rendered in favor of plaintiff for the sum of $10,440. The defendant moved for a new trial and in arrest of judgment, and both motions having been denied, the case has been brought here for review.

By the contract in question Struble obligated himself to build and keep in good order on his leased grounds, in East St. Louis, Illinois, all necessary stock yards and feeding pens suitable for the reception, feeding, handling, loading and unloading of live stock which might be shipped or transported over the Terre Haute and Indianapolis Railroad to and from East St. Louis; to receive and unload all live stock over that road; to collect all freight and charges on same, and pay over to the company or its authorized agents all moneys so collected; to order from the proper agent of the company all cars necessary for the transportation of live stock from East St. Louis; to load in a proper manner all live stock for transportation from that place by that company; to bed such cars at a cost to shippers of not more than one dollar per car, to be collected by him from shippers; and to attend to all other necessary matters pertaining to the safe and prompt loading of all such live stock for transportation over that road.

The company, in consideration of the performance by Struble of the stipulations of the contract, agreed to build all necessary loading shutes for the use of the company connected with said yards; to send all live stock coming to East St. Louis over its road to Struble's yards, except such as may be specially ordered

otherwise by shippers or owners; to pay him fifty cents per load for all stock received by him over the road and unloaded in his yards, and two dollars for each and every car of live stock loaded by him to be transported by the company from East St. Louis; and to give him the loading of all live stock which may be transported over its road from that city.

Struble's yards were completed and opened for business in December, 1870. From that date until some time in October, 1873, all live stock coming to East St. Louis over defendant's line was unloaded at those yards, and live stock shipped over that road from that city was loaded by Struble. Early, however, in the fall of 1873, the National Stock Yards were completed and opened for business. They were just outside of the corporate limits of East St. Louis, and near defendant's road.

The plaintiff claimed that up to October, 1873, he performed all the conditions of the contract, and was ready, willing, and able to comply with it in all respects, until it should, by its own terms, be terminated; but that he was prevented by defendant after that date from fully executing it. All this the defendant denied.

The record contains numerous assignments of error, but we shall notice only such as are relied on in argument. They seem to embrace every essential question in the case.

1. It is claimed that the court below erred in admitting evidence offered by the plaintiff. The specification under this head refers to evidence as to the number of cars loaded with live stock and taken by the defendant from the National Stock Yards, between August 1st, 1874, and April 1st, 1880. The contention of plaintiff was that, within the meaning of the contract, he was entitled to load those cars, and recover therefor from the defendant the price fixed in the contract for such services; this, upon the alleged ground that that stock had not been specially ordered by shippers or owners to the National Stock Yards, and could have been directed by the defendant to Struble's yards had it made any or proper effort to do so. In this view the evidence objected to was competent, as furnishing a basis to estimate the damages which plaintiff sustained by

reason of the breach of the contract, if such breach was established by the evidence.

2. The court, among other things, said to the jury that in determining the quantity of stock that would probably have been shipped from the plaintiff's yards, they should include only such as the jury believed would have been possible for the defendant to direct to those yards. In the same connection the court said:

"The jury in considering the meaning of the words 'all live stock which may be transported over the said railroad from East St. Louis,' found in the last clause of the contract sued on, must determine from all the evidence before them what stock is included. The words evidently apply to such stock as in the ordinary course of the defendant's business should be shipped from that point over their line of railroad. It applies to all such stock, whether loaded at plaintiff's yards or some other yards used for loading stock so shipped. As already suggested, it should be applied only to stock which it was possible for defendant to have loaded by plaintiff. It does not apply to stock, the owner or shipper of which directed the loading to be done by some person other than the plaintiff, and over the loading of which defendant had no control."

We are of opinion that there was no error in these instructions. The contract contemplated, upon the part of Struble, all the preparations necessary in and about his yards to meet the necessities of the company's business in the transportation of live stock; and upon the part of the company that it would do all it could, in the absence of special orders from shippers, to bring live stock to plaintiff's yard to be by him loaded in cars for transportation over defendant's road. Such was, in substance, the direction given to the jury. The court could not, under any reasonable interpretation of the contract, have said less than it did.

3. It is assigned for error that the court overruled defendant's motion for a new trial. A large part of the printed argument on behalf of defendant is devoted to a discussion of the grounds assigned in support of the motion for a new trial. But

the action of the court below in refusing a new trial is not subject to review here.    This has long been settled by the decisions of this court.    *Railroad Co.* v. *Fraloff,* 100 U. S. 24 ; *Wabash Railway Co.* v. *McDaniels,* 107 id. 456.

The judgment must be affirmed.

*It is so ordered.*