UNITED STATES *ex rel.* MORRIS *et al. v.* DELAWARE, L. & W. R. Co.

(*Circuit Court, N. D. New York.* October 18, 1889.)

1. INTERSTATE COMMERCE ACT—UNJUST DISCRIMINATION—USE OF A PARTICULAR LIVE-STOCK CAR.

To an application for a *mandamus* to compel a carrier to transport relators' stock in the cars of a certain live-stock transportation company, the respondent set forth that it had entered into a contract with another transportation company, by which that company was to furnish respondent a certain number of cars per year; that such cars were available to all shippers of stock: that they were much more useful to defendant than other live-stock cars, in that they could be converted into coal-cars when not used for live-stock; and that defendant paid mileage for the use of the cars. *Held,* that the refusal to transport relators' stock in the cars offered at the same rates charged for stock in the other cars was not an "unjust discrimination" in favor of the transportation company, whose cars respondent was using, within the meaning of the interstate commerce act, as the circumstances and conditions were not substantially similar.

**2. Same—Mandamus Pendente Lite.**

The interstate commerce act authorizes the court, in its discretion, to grant a *mandamus*, when any question of fact as to the proper compensation of the carrier is raised, "notwithstanding such question of fact is undetermined" pending the determination of such question. *Held*, that this does not authorize the court to grant relief where a case of unjust discrimination is not made out.

In Equity. Application for *mandamus*. On demurrer to return.

*J. C. Clayton*, for relators.

*Rogers, Locke & Milburn*, for respondent.

WALLACE, J. The jurisdiction invoked by the relators is founded on that section of the "Act to regulate interstate commerce," as amended March 2, 1889, which authorizes the court to issue a writ of *mandamus* upon the relation of any person alleging the violation by a common carrier of any of the provisions of the act which prevent the relator from having interstate traffic moved by the carrier "at the same rates as are charged, or upon terms or conditions as favorable as those given, by said carrier for like traffic under similar conditions to any other shipper." The unjust discrimination alleged in the petition upon which the alternative writ was granted consists in the refusal of the respondent to transport cattle for Morris, a shipper of cattle, in cars of a special construction belonging to the American Live-Stock Transportation Company, superior, by reason of their improvements, to ordinary cattle-cars; whereas, it transports cattle for other shippers in cars having some, but not all, of such improvements, belonging to the Lackawanna Live-Stock Express Company. The American Live-Stock Transportation Company, the co-relator with Morris, is a corporation organized for the purpose of transporting live-stock and other merchandise, and its presence would seem to be superfluous, unless it is here to obtain the benefit of an adjudication that the respondent is bound to accept its cars, whenever tendered with cattle for transportation, and allow to it the mileage of three-fourths of a cent per mile for the use of the cars which the relators aver is allowed by the respondent to the Lackawanna Live-Stock Express Company. . The return by the respondent to the alternative writ, besides denying in general terms the charge of unjust discrimination, sets forth that it has entered into a contract with the Lackawanna Live-Stock Express Company for the term of five years, by which that company agrees to furnish at least 200 of its improved stock-cars to run on the railway of the respondent; that such cars are not used exclusively by any one shipper of live-stock, but are available to all shippers; that the cars, unlike those of the American Live-Stock Transportation Company, are so constructed as to permit of the carriage of coal, which is the principal business of the respondent, when not loaded with live-stock; and that in consideration of the special contract the defendant agreed to use the cars upon its road, and pay mileage therefor, as if such cars were furnished by a connecting company; and it also alleges that, after entering into such agreement, the respondent and several other trunk line railroad companies entered into an agreement to discontinue hauling private stock-cars, except for horses, for reasons which are particularly set forth. The re-

lators have demurred to this return, and move for a peremptory *mandamus*, insisting that the return does not allege facts which justify the refusal of the respondent to transport the cattle of Morris in the cars of the American Live-Stock Transportation Company.

The jurisdiction of this court, conferred by the interstate commerce act, to compel by *mandamus* the observance by common carriers of the provisions of the act, is restricted exclusively to the prevention of unjust discrimination by such carriers. The question for consideration consequently is whether, if the facts alleged in the return are true, the respondent has been guilty of any unjust discrimination between Morris and the shippers for whom it carries cattle in the cars of the Lackawanna Live-Stock Express Company. Unjust discrimination is prohibited by sections 2 and 3 of the interstate commerce act. What constitutes unjust discrimination may be ascertained from the language of these sections, as well as of the section which authorizes the circuit court to redress it by *mandamus*. By section 2 it consists in charging one person a different compensation than is charged another for doing "the like and contemporaneous service in the transportation of a like kind of traffic, under substantially similar circumstances and conditions." By section 3 it consists in giving "any undue or unreasonable preference or advantage" to any particular shipper, or subjecting him to any undue or unreasonable prejudice or disadvantage "in any respect whatever." The former relates to unjust discrimination in rates. The latter is comprehensive enough, standing alone, to include every form of unjust discrimination, not only in rates, but also in the conveniences and facilities supplied to shippers in any of the details of the carrying service; and such is the judicial construction in England of the term "undue or unreasonable preference or advantage," as used in the English "railway and canal traffic act," (17 & 18 Vict. c. 31, § 2.) It is provided in section 3 that all the common carriers subject to the provisions of the act "shall, according to their respective powers, afford all reasonable, proper, and equal facilities for the interchange of traffic between their respective lines, and for the receiving, forwarding, and delivering of passengers and property to and from their several lines and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such common carrier to give the use of its tracks or terminal facilities to another carrier engaged in like business." This provision refers only to facilities between connecting lines at terminal points for the interchange of traffic and passengers; and the term "facilities" does not embrace car equipment for the transportation of freight over the carrier's own road. *Scofield* v. *Railroad Co.*, 2 Int. St. Com. R. 90, 116.

These sections, by declaring the specified acts of discrimination unlawful, qualify materially in some respects the common-law rights and obligations of the carriers mentioned. By the common law, although public carriers are not permitted to make unreasonable discrimination in performing the services which they undertake between those whom it is their duty to serve, the discrimination which is unreasonable is such

only as inures to the undue advantage of one person or class of persons in consequence of some injustice inflicted upon another. The carrier is not obliged to treat all who patronize him with absolute equality. Thus it is his privilege to charge less than fair compensation to one person, or to a class of persons; and others cannot justly complain so long as he carries on reasonable terms for them. *Menacho* v. *Ward*, 27 Fed. Rep. 530. That privilege can no longer be exercised under the interstate commerce act by the carriers subjected to its provisions in the transportation of a like kind of traffic under substantially similar circumstances and conditions. Again, it is no part of the common-law obligation of railway companies to furnish the same facilities or instrumentalities of transportation to all alike; and while it is unquestionably their duty to furnish suitable and adequate facilities for all reasonable necessities of the business they engage in, they may nevertheless chose their own appropriate means of carriage. This was the doctrine of the *Express Cases*, 117 U. S. 1, 6 Sup. Ct. Rep. 542, 628, in which it was held by the supreme court that railroad companies are not required by usage or by the common law to transport the traffic of independent express companies over their lines in the manner in which such traffic is usually carried and handled. But the interstate commerce act requires them to treat all impartially; and if one shipper is subjected to any undue or unreasonable prejudice or disadvantage because a railway company permits another shipper to use his own cars for carrying traffic over its road, their right to choose their own appropriate means of carriage is to that extent curtailed.

It is unnecessary to decide in the present case whether the respondent would be guilty of unjust discrimination towards the American Live-Stock Transportation Company, or indirectly towards Morris, if it should refuse to enter into such an arrangement with that company as it has made with the Lackawanna Live-Stock Express Company. The respondent does not prevent either relator from transporting cattle over its road in the cars furnished to it by the Lackawanna Live-Stock Express Company; and, if the facts set forth in the return are true, the cars belonging to the Lackawanna Live-Stock Express Company differ so in construction from those of the American Live-Stock Transportation Company, as well as from those of ordinary private stock-cars, that the respondent can use them more profitably and conveniently than the others, because they can be used for its ordinary coal traffic when not in use for carrying cattle. So, also, if the facts in the return are true, the contract made with the Lackawanna Express Company secures to the respondent the advantage of having a definite number of cars always at its disposal for use in its general business,—an advantage which it could not have by using the cars of the American Live-Stock Express Company, or the cars of any other shipper, in the absence of such a contract. Thus there are reciprocal rights and obligations arising from the contract between the respondent and the Lackawanna Live-Stock Express Company, and special circumstances in their relations affecting the question of compensation, which are not present in the conditions of the service which the relators demand. In short, there is no unjust discrimination towards the relators as to rates, because

the respondent does not refuse to carry traffic for them under substantially similar circumstances and conditions to those of its service for the Lackawanna Live-Stock Express Company; and for the same reason it does not give the latter any unreasonable preference or advantage over the relators, but only such a preference or advantage as it may fairly give because of the difference in cost, expense, and the exceptional character of the service. The case of *Car Co.* v. *Railroad Co.*, 1 Int. St. Com. R. 132, is instructive upon this point. See, also, *Nicholson* v. *Railway Co.*, 5 C. B. (N. S.) 366; *Cooper* v. *Railroad Co.*, 4 C. B. (N. S.) 738; *Oxlade* v. *Railroad Co.*, 1 C. B. (N. S.) 454.

The section which authorizes the court to grant a *mandamus* confers the discretionary power, when any question of fact as to the proper compensation of the carrier is raised by the pleadings, to issue the writ, "notwithstanding such question of fact is undetermined, upon such terms as to security, payment of money into court, or otherwise as the court may think proper, pending the determination of the question of fact." Relying upon this language of the section, the relators insist that the peremptory *mandamus* should be allowed, and the question of proper compensation for the respondent be reserved. This contention ignores the consideration that until a case of unjust discrimination is shown to exist the court is not authorized to award any relief whatever. If it were shown that the respondent refuses to receive traffic in the cars of the American Live-Stock Transportation Company, while receiving it for another in substantially the same way, then it might be competent to decide that the relators are prevented from having their traffic moved upon like favorable terms or conditions, and the question of compensation might be determined at a later stage in the case. Until this is shown, however, they do not make out a case for the intervention of the court. For these reasons the return is held to be sufficient.