# Wytheville.

COMMONWEALTH OF VIRGINIA AT THE RELATION OF THE NORTON BOARD OF TRADE, INC. v. NORFOLK AND WESTERN RAILWAY COMPANY AND OTHERS.

June 9, 1910.

Absent, Harrison, J.

1. STATE CORPORATION COMMISSION—*Powers Over Railroads—Public Duties—Joint Use of Stations.*—The power given and the duty imposed upon the State Corporation Commission by section 156 (b) of the Constitution refer to all matters relating to the performance of the public duties of transporation and transmission companies, but the use by one railroad company of the station and terminal facilities of another railroad company is not a public duty owing by the latter to the former, or its patrons.

2. STATE CORPORATION COMMISSION—*Jurisdiction Over Railroads—Terminal Facilities—Superior Authority of Legislature—Constitution, Section* 156 (b).—Under the provisions of section 156 (b) of the Constitution, the General Assembly has superior authority to the State Corporation Commission in the matter of regulating the use of the track and terminal facilities of one railroad company by another: and, it having declared (Code, 1904, section 1494c (4) ) that one railroad company shall not be required to give the use of its track and terminal facilities to another company engaged in a like business, the State Corporation Commission has no authority to require one company to grant such use to another. Nor is such power conferred by section 1313a (16) of the Code which simply affirms the constitutional power of the commission to require corporations to perform all public duties or requirements imposed upon them by the Constitution, or by law.

3. RAILROADS—*Sharing Stations—Constitution, Section* 166.—The duty imposed by section 166 of the Constitution upon one railroad company to receive and transfer passengers, freight and cars,

without delay or discrimination, from connecting railroads, does not require such company to share its tracks and station buildings with such connecting railroad.

-4. STATE CORPORATION COMMISSION—*Jurisdiction—Railroads—Sharing Terminal Facilities—Code, Section* 1294c (4).—Under the terms of section 1294c (4) of the Code, the State Corporation Commission is prohibited from requiring one railroad company to grant the use of its track and terminal facilities to another company engaged in a like business.

5. STATUTES—*Copying Foreign Statutes—Construction—Code, Section* 1294c (4).—When one sovereignty enacts a statute similar to one previously in force in another jurisdiction, the latter enactment includes such construction as the courts have previously placed upon the statute thus copied, hence this court will place upon section 1294c (4) of the Code, which corresponds very closely with section 3, clause 2 of the Interstate Commerce Act, the same construction as has been heretofore placed by the Federal courts upon the latter act.

·6. EMINENT DOMAIN—*How Conferred—Joint Use of Railroad Facilities.*—The legislature of this State has not granted the power to one transportation company to condemn the right to jointly use the tracks and terminal facilities of another transportation company, and hence the power does not exist. The exercise of the right of eminent domain, being against common right, cannot be implied or inferred, but must be given in express terms, or by necessary implication.

7. RAILROADS—*Joint Stations—How Right Acquired.*—The right to the joint use by two or more railroad companies of the station facilities of one of them can only be acquired by contract between the companies interested, which they alone can make.

Appeal from the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Irvine & Morison,* for the appellant.

*L. H. Cocke, C. T. Duncan, Henry L. Stone* and *Albert S. Brandeis,* for the appellees.

KEITH, P., delivered the opinion of the court.

The opinion of the chairman of the Corporation Commission, filed in this case, so fully and satisfactorily disposes of all the questions involved that we cannot do better than to adopt it as the opinion of this court, with slight verbal changes.

"The petitioner, suing on behalf of itself and all other citizens of the town of Norton, alleges: That Norton is the western terminus of the Clinch Valley Division of the Norfolk and Western Railway Company, the eastern terminus of the Cumberland Valley Division of the Louisville and Nashville Railroad Company, and the eastern terminus of the Interstate Railroad Company, and that Norton is also the terminus of two other local roads, namely, the Wise Terminal Company and Virginia and Kentucky Railway Company; that the only practicable means of connection between the eastern and western portions of the county of Wise is through the town of Norton, and that owing to the topography of the country all through travel and traffic must pass through the said town; that the Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company, jointly, have railroad yards and a passenger and freight depot in the town of Norton; that the Virginia and Kentucky Railroad Company and the Wise Terminal Company have, under some arrangement, the use for their purposes of said railroad yards and depot; that all of these railroads, except the Interstate, have been entering Norton and doing business there for a number of years; that the Interstate, on the other hand, is at this time completing the extension of its roads from Appalachia to Norton; that it is about ready to begin a regular passenger and freight business; that it parallels the Louisville and Nashville Railroad from Appalachia to Norton, a distance of about ten miles, and enters the town through a narrow valley at the west end of Norton at the same point at which the Louisville and Nashville Railroad enters; that the Interstate Railroad Company has ac-

quired a location for its freight yard and for a freight and passenger station in the west end of the town, and will shortly establish its freight and passenger station at said point, unless otherwise directed by this Commission; that the distance between the said points is somewhat less than a mile; that the present station of the Norfolk and Western Railway and Louisville and Nashville Railroad is nearly opposite the business center of the town, while the proposed location of the Interstate Railroad station is at the extreme western end of the town at a very inconvenient place; that such joint station is ample in size to accommodate the business of the Interstate Railroad Company, in addition to accommodating the business of the other railroads now using it; that it is highly important to the commercial interests and to the convenience of the people of Norton and of Wise county, that there should be one station for all of the rail-roads at the town, and that the object of the petition is to require the Interstate Railroad Company to use the present freight and passenger depot of the Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company for its freight and passenger business, and to require the Norfolk and Western Railway and the Louisville and Nashville to permit the said Interstate Railroad Company to use their said freight and passenger depot, upon such terms as may be equitable. There are other allegations showing the desirability of a single station at the said town.

"The prayer of the petition is, that this Commission shall enter an order requiring the Louisville and Nashville Railroad Company and the Norfolk and Western Railway Company to grant to the Interstate Railroad Company the right, upon such fair and equitable terms as may be prescribed by the Commission, to use in common with themselves their present Norton depot for passenger and freight business, and to require the said Interstate Railroad Company to adopt and use the said depot in common with the Norfolk and West-

ern Railway Company and the Louisville and Nashville Railroad Company, upon such just and equitable terms as may be prescribed by this Commission.

"The Interstate Railroad Company has not answered the petition, and presumably is anxious that the prayer of the petition shall be granted. The Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company have each demurred to the petition, claiming that it appears upon the face of the complaint that the Virginia Constitution and statutes give this Commission no jurisdiction to grant the relief prayed for; that to grant such relief would be to deprive the defendants of their property without due process of law, and therefore be a violation of Section 11 of Article I of the Constitution of Virginia and of the Fourteenth Amendment to the Constitution of the United States.

"Sections 156 (b) and 166 of the Constitution of Virginia, and section 1313a (16), Pollard's Code of Virginia, are relied upon by the petitioner to give the Commission authority to grant the relief asked for, and it is claimed that such action will not violate any provision either of the State or Federal Constitution, and that to deny the relief will be to violate section 156 (b) and section 166 of the Constitution of Virginia, requiring the Commission to make and enforce such regulation as may be necessary to prevent injustice or unreasonable discrimination by any transportation company in favor of or against any person, locality, community or any connecting line.

"These being the issues, it becomes necessary to examine the sections of the Constitution and the statutes applicable thereto.

"The portion of section 156 (b) relied upon by the petitioner is in these words: 'The Commission shall have the power, and be charged with the duty, of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters re-

lating to the performance of ·their public duties and their charges therefor, and of correcting abuses therein by such companies; and to that end the Commission· shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements the Commission may, from time to time, altar or amend.'

"The power given and the duty imposed upon the Commission by this clause refer to all matters relating to the performance of the public duties of the transportation and transmission companies, and it is 'to that end,' to use the words of the Constitution, that the Commission is given authority to require the establishment and maintenance of 'all such public service, and facilities and conveniences as · may be reasonable and just.' Therefore, unless the Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company, as the owners of that joint station at Norton, are required in the performance of their public duties to allow the Interstate Railroad Company to enter and share in such use, then the first clause above quoted does not confer the authority claimed, because the power and duty of the Commission are both limited to matters relating to the public duties of such companies. So also as to the discrimination which is forbidden. If there is no duty imposed as to the particular act, the carrier is free to make such contracts as its interests may require. 1st I. C. C. Act (Drinker), pp. 214-333; *Consolidated Flouring Co.* v. *Southern Pacific R. Co.,* 9 I. C. C., Rep. 206e; *Retransportation of Fruit,* 10 I. C. C. Rep., 360; *United States* v. *Delaware L. & W. Ry. Co.,* (C. C.), 40 Fed. 101; *Worchester Car Co.* v. *Pennsylvania R. Co.,* 3 I. C. C. Rep. 577; *Kentucky R. Commission* v. *L. & N. R. R. Co.,*

10 I. C. C. Rep. 173; *Butchers, &c., Co.* v. *L. & N. R. Co.*, (C. C. A.), 67 Fed. 35; *Central Stock Yards Co.* v. *L. & N. R. Co.*, (C. C. A.), 118 Fed. 113, 63 L. R. A. 213; Id. 192 U. S. 568, 48 L. Ed. 565, 24 Sup. Ct. 339; *Alex. Bay Co.* v. *N. Y. C. & H. R. R. Co.*, 18 App. Div. 527, 45 N. Y. Supp. 1091.

"The Norfolk and Western Railway Company certainly owes to its patrons, the general public, desiring its services, all proper station facilities and conveniences. The same duty is incumbent upon the Interstate Railroad Company as to its patrons; but can it be said that the Norfolk and Western should supply station facilities for the patrons of the Inter· state? If so, there must be a corresponding duty on the Interstate to furnish station facilities for the Norfolk and Western. We think that neither owes such a duty to the other or to the patrons of the other. There are certain important duties, however, which railroad companies owe to each other, which in the interest of the general public are imposed by statute in Virginia.

"Section 4 of chapter III of the Act Concerning Public Service Corporations (Pollard's Code, sec. 1294c (4) ), reads thus: 'All transportation companies shall, according to their respective powers and with due regard to the exigencies of their other traffic, afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines, and for receiving, forwarding and delivering of passengers and property to and from their several lines, and those connecting therewith, and shall not discriminate in their rates and charges between such connecting lines; but this shall not be construed as requiring any such company to establish or maintain unremunerative train service, or to give the use of its track or terminal facilities to another· company engaged in a like business.'

"The Commission's power to prescribe rates under section 156 (b) of the Constitution is declared to be 'paramount,'

'but its authority to prescribe any other rules, regulations or requirements for corporations or other persons, shall be subject to the superior authority of the General Assembly to legislate thereon by general laws.' Unless, therefore, the legislature has exceeded its constitutional authority, the proviso in the concluding cause of the statute above quoted—clause 4, section 1294c—that it shall not be construed as requiring a company 'to give the use of its track or terminal facilities to another company engaged in a like business,' is conclusive of this case. The superior authority of the General Assembly having been exercised by the enactment of this statute, this Commission has no authority to require the Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company to grant to the Interstate Railroad Company the use of their track and terminal facilities at Norton. The decisive force and effect of this statute seems to have been fully realized, for in the brief of the learned counsel for the petitioner, it is claimed that section 1294c (4) must be construed in connection with section 1313a (16), that when so construed it does not forbid the relief asked for, and that, even if these sections be repugnant, section 1294c (4) cannot operate because it conflicts with section 166 of the Constitution.

"The language of section 1313a (16), which is thus relied upon, is as follows: 'The Commission shall have power and authority to require, by its rules, regulations, and requirements, all corporations chartered under the laws of this State, and all foreign corporations doing business in this State, to perform and discharge any public duty or requirement imposed upon such corporations by the Constitution or by law.'

"It is manifest, however, that this language does not define or create any public duty to be performed by transportation companies, but simply affirms the constitutional power of the Commission to require corporations doing business in

this State to perform all public duties or requirements imposed upon such corporations by the Constitution or by law; so that we cannot agree that it aids in the construction of section 1294c (4), or illumines its meaning in any respect whatever.

"Section 166 of the Constitution is relied on to show that this Commission has the power to require the Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company to grant the use of its track and terminal facilities to the Interstate Railroad Company, notwithstanding the provision contained in section 1294c (4).

"Section 166 is as follows: 'All railroad companies whose lines of railroad connect, shall receive and transfer each others passengers, freight and loaded or empty cars without delay or discrimination.'

"We think that a careful reading and comparison of the various clauses quoted demonstrates the fallacy of the contention that there is any such conflict as is contended for. We find it impossible to read into section 166 of the Constitution any requirement that a railroad company is bound to share its tracks and station buildings, acquired with its own means and to enable it to better discharge its own public duties, with a competing railroad, because bound under that section to receive and transfer passengers, freight and cars, without delay or discrimination from connecting railroads.

"All the public duties of transportation companies must be performed, but when we inquire as to what is the public duty of one transportation company to another with reference to its tracks and terminal facilities, the answer is found in section 1294c (4) which, fairly construed, prohibits this Commission from requiring such company to grant the use of its track or terminal facilities to another company engaged in a like business.

"Section 1294c (4) corresponds very closely with section 3, clause 2 of the Interstate Commerce Act, and it is a well settled principle of construction that when one sovereignty enacts a statute similar to one previously in force in another jurisdiction, the latter enactment includes such construction as the courts have previously placed upon the statute thus copied, and this section 3, clause 2, of the Act to Regulate Commerce has already received in the courts of the United States the construction which is here put upon it. *Little Rock Railroad* v. *St. L. Ry Co.*, 59 Fed. 400, 63 Fed. 775; *Oregon Short Line* v. *Northern Pacific*, 61 Fed. 158, 61 Fed. 465; *Ky. & I. Bridge Co.* v. *L. & N. R. Co.*, 37 Fed. 567; *L. & N. R. Co.* v. *Central Stock Yards Co.*, 212 U. S. 132, 53 L. Ed. 441, 29 Sup. Ct. 246.

"Another serious difficulty about requiring the Norfolk and Western Railway Company and the Louisville and Nashville Railroad Company to grant to the Interstate Railroad Company the right to use its tracks and station, to use the language of the petition, 'upon such fair and equitable terms as may be prescribed by the Commission,' is that the Virginia law has made no provision for the ascertainment of the compensation which would be due to the defendant companies by the Interstate Railroad Company for the joint use of its property. The exercise of the power of eminent domain being against common right, it cannot be implied or inferred, but must be given in express terms or by necessary implication, and the Legislature of Virginia has not granted the power to one transportation company to condemn the right to jointly use the tracks and terminal facilities of another transportation company. In the last case referred to, the Supreme Court of the United States declared that the lack in the section of the Kentucky Constitution of adequate provisions for compensation for property could not be supplied by inserting them in the judgments of the court or otherwise. 'The law itself,' said the court, 'must

save the party's rights, and not leave them to the discretion of the court as such.'

"From the allegations of the petition there appear to be good reasons for supposing that the public at Norton would be greatly accommodated by allowing the Interstate Railroad Company to enter and share with the other railroads at Norton in the use of the ample station facilities alleged to be there, but in order to allow it to do so, there should be a contract between the corporations involved, defining the terms and conditions upon which such joint use is to be enjoyed, and this commission is without authority to make such a contract for the parties, and the laws of Virginia have made no provision for the condemnation of such a joint use of station facilities.

"As we have concluded that under the Constitution and laws of Virginia we have no authority to grant the prayer of the petition, we deem it unnecessary to discuss or decide whether to grant such prayer would be to violate the Fourteenth Amendment of the Constitution of the United States."

For the foregoing reasons, we are of opinion that the final order of the Corporation Commission should be affirmed.

*Affirmed.*