SOUTHERN PAC. CO. v. CAMPBELL et al.

(Circuit Court, D. Oregon. July 31, 1911.)

No. 3,370.

1. COMMERCE (§ 13*)—INTERSTATE COMMERCE—REGULATION—EFFECT.

Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), regulates interstate commerce only, and a state may regulate intrastate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 7; Dec. Dig. § 13.*]

2. COMMERCE (§ 58*)—INTERSTATE COMMERCE—REGULATION BY STATES.

Laws Or. 1907, p. 75, § 23, requiring all railroads at points of intersection with other railroads to unite therewith in establishing and maintaining suitable platforms and station houses for the convenience of passengers desiring to transfer from one road to the other, and for the transfer of passengers, baggage, and freight when the same shall be ordered by the Railroad Commission, etc., affords added facilities for all kinds of commerce over the routes of intersecting roads, and the require-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment that such railroads shall connect their lines is not a regulation of interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86; Dec. Dig. § 58.*]

3. COMMERCE (§ 61*)—INTERSTATE COMMERCE—REGULATION BY STATES.

Laws Or. 1907, p. 82, § 27, requiring all railroads to switch for a reasonable compensation, and to deliver without discrimination or unreasonable delay any freight or cars, loaded or empty, destined to any point on their tracks or connecting lines, includes interstate as well as intrastate commerce, and makes exchange of all kinds of freight mandatory on connecting railroads and is invalid as interfering with interstate commerce, and an order of the State Railroad Commission to enforce the provision is invalid.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81–89; Dec. Dig. § 61.*

Regulations as to transportation of property as interference with interstate commerce, see note to Rupert v. United States, 104 C. C. A. 259.]

4. STATUTES (§ 64*)—INVALIDITY IN PART—EFFECT.

Laws Or. 1907, p. 67, creating a railroad commission and regulating carriers, is not necessarily invalid merely because of the invalidity of section 27 because interfering with interstate commerce.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66; Dec. Dig. § 64.*]

Suit by the Southern Pacific Company against Thomas K. Campbell and others, as Railroad Commissioners of the State of Oregon, known collectively as the Railroad Commission of Oregon, and another. Temporary injunction continued.

W. D. Fenton, Ben C. Dey, and James E. Fenton, for complainant. A. M. Crawford and Arthur C. Emmons, for defendants.

WOLVERTON, District Judge. This cause was submitted upon a hearing for a continuance of a temporary injunction previously issued by the court. Upon the petition of certain merchants, manufacturers, and shippers of freight, whose mills, factories, and places of business are situated along the tracks of the Yamhill Division of the Southern Pacific, the Railroad Commission of the state of Oregon made and entered an order directing and requiring said company to permit the United Railways Company to connect its tracks with the tracks of said Southern Pacific Company at or near the intersection of Water and Columbia streets, in the city of Portland, and, when said connection should be made, thereafter to transfer and switch for a reasonable compensation, and deliver without discrimination or any unreasonable delay, any freight or cars, loaded or empty, destined to any point on its tracks or the tracks of said United Railways Company.

The Southern Pacific Company, resisting the order, has entered suit against the Railroad Commission to enjoin the enforcement thereof. By its bill of complaint it is shown that the Southern Pacific Company is a common carrier of passengers and freight over its lines of railway in the states of Oregon and California, and other states and territories of the United States, and as such is engaged in both intrastate and interstate commerce, and that the United Railways Company is the owner of, and in possession and operating for hire, a street railway

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the city of Portland, commencing at the intersection of Irving and Front streets, in said city, and running thence southerly on Front street to Jefferson street; thence easterly on Jefferson to Water street; thence a short distance on Water street; but that it has no station or terminal at either end of its said railway. It is the physical connection of these two roads near the terminus of the Southern Pacific Company's line at the foot of Jefferson street, and the exchange of freight, that is sought to be enforced by the order of the commission.

Counsel in their brief and argument attack the validity of the act of the legislative assembly of Oregon creating the Railroad Commission upon many grounds, but I am not disposed to examine these further than to say that after a very careful consideration of the act in general in a former case I was led to the firm conclusion that it was inimical neither to the fundamental law of the state nor to the commerce clause of the federal Constitution. Oregon R. & Navigation Co. v. Campbell et al. (C. C.) 173 Fed. 957.

Beyond these objections, however, it is especially urged that sections 23 and 27 of the Oregon act of 1907 (Laws 1907, pp. 75, 82), are obnoxious to the commerce clause of the national Constitution (article 1, § 8), and consequently that the order of the commission directed against the Southern Pacific Company as it respects both the requirement of physical connection between the two roads and the exchange of freight is likewise invalid and of no effect. I will examine this contention.

[1] Preliminarily I should say that it is argued that Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), is a legislation by Congress upon the same matter, and covers the whole subject, and that, Congress having occupied the field, the state is excluded from enacting legislation pertaining to the same subject-matter. This view, however, loses sight of the fact that Congress sought to regulate interstate commerce only, while the state legislation is in relation to intrastate commerce. Between the two subjects there is a well-recognized and clear distinction, so that the point is not well taken.

[2] Section 23 of the state commission act provides that:

"All railroads shall, at all points . of connection crossings or intersection with the roads of other railroads. unite therewith in establishing and maintaining suitable platforms and station houses for the convenience of passengers desiring to transfer from one road to the other; and for the transfer of passengers. baggage or freight. whenever the same shall be ordered by the railroad commission; and shall, when ordered by it, keep such depot or passenger house warmed, lighted, and opened a reasonable time before the arrival, and until after the departure, of all trains carrying passengers; and said railroads shall stop all trains at said depots for the transfer of passengers, baggage and freight when so ordered by the commission. Such railroads whose roads so connect or intersect shall, when ordered by the commission, so unite and connect the tracks of the several roads as to permit the transfer of cars from the track of one to that of the other. The expense of constructing and maintaining such station houses, platforms and track connections, shall be paid by such railroads in such· proportions as may be fixed by the commission, in the event such railroads do not agree between themselves as to the apportionment thereof." Laws 1907, p. 75.

And section 27 that:

"All railroads shall afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines for forwarding and delivering passengers and property, and shall transfer, switch for a reasonable compensation, and deliver without discrimination or unreasonable delay any freight or cars, loaded or empty, destined to any point on its track or any connection lines; provided, that precedence over other freight shall be given to live stock and perishable freight. The commission shall have control over private tracks in so far as the same are used by common carriers, in connection with any railroad for the transportation of freight, in all respects the same as though such tracks were a part of the track of said railroad." Laws 1907, p. 82.

As it pertains to section 23, Laws 1907, p. 75, it would seem that its operation and effect are in aid of interstate commerce. It manifestly affords added facilities for a less restrained and freer interchange of all kinds of commerce pursuing its course along the lines and over the routes of these two roads, whether it be denominated interstate or intrastate. So regarding the requirement that the two companies connect their lines of transportation, it is in no wise a regulation of commerce within the meaning of the Constitution. Such is the holding of the United States Supreme Court in an analogous case. Wisconsin, etc., R. Co. v. Jacobson, 179 U. S. 287, 295, 21 Sup. Ct. 115, 118, 45 L. Ed. 194. "A state," says the court, "may furnish such facilities or direct them to be furnished by persons or corporations within its limits without violating the federal Constitution." There can be no difficulty in the practical application of the requirements of the section.

[3] As much cannot be predicated of section 27. The requirement there is that all railroads shall switch for a reasonable compensation, and deliver without discrimination or unreasonable delay, any freight or cars, loaded or empty, destined to any point on its track or any connecting lines. The terms of the section are so broad in their scope as imperatively to include interstate as well as intrastate commerce, and the exchange of all kinds of freight is mandatory upon all connecting railroads. The order of the commission is amply as broad as the act.

The Constitution of Kentucky, § 213, requires that all railroad companies organized under the laws of that state or doing a railway business therein shall receive, transfer, deliver, and switch empty or loaded cars, and shall move, transport, receive, load, or unload, all the freight in car loads or less quantities, coming to or going from any railroad, transfer, or belt line, with equal promptness and dispatch, and without any discrimination; and shall so receive, deliver, transfer, and transport all freight as above set forth from and to any point where there is a physical connection between the tracks of said companies. This clause came under scrutiny of the federal court in Central Stockyards Co. v. Louisville & N. R. Co., 118 Fed. 113, 55 C. C. A. 63, 63 L. R. A. 213, and it was held that a state is without power to compel a railroad company to transfer cars of live stock to a connecting road at a point of connection within the state, where the shipment was received in another state, which rendered it interstate commerce. Thus it was determined that, if the Constitution required the transfer and delivery from one railroad company to another within the state of articles or commodities of interstate commerce, it could not stand. On appeal to

the Supreme Court, that court passed over any construction of the Constitution, and disposed of the case on the ground that one railroad, having its own stockyards in a city, could not be required to accept live stock from other states for delivery at the stockyards of another railroad in the same city. Central Stockyards v. Louisville, etc., Ry. Co., 192 U. S. 568, 24 Sup. Ct. 339, 48 L. Ed. 565. Another case came up between the same parties, based upon a like state of facts, in the state courts of Kentucky. It was there determined that it was not the purpose or intendment of the state Constitution to regulate commerce between the states, but that the requirement for the exchange and switching of cars and freight. was a police regulation, perfectly valid and proper for exercise by state authority without encroachment upon national powers. The clause alluded to was further construed as not to require one railroad company to deliver its own cars to another for further transportation. Louisville & N. R. Co. v. Central Stockyards Co., 133 Ky. 148, 97 S. W. 778. · This case came under review of the Supreme Court on writ of error, and was reversed by that court, principally on the ground that the Constitution of Kentucky, as construed by the state court, requiring a delivery and transfer by a railroad company of its own cars was a taking of property without due process of law, and therefore contrary to the fourteenth amendment of the national Constitution. Louisville, etc., R. R. Co.. v. Stockyards Co., 212 U. S. 132, 29 Sup. Ct. 246, 53 L. Ed. 44. The court, however, expressed surprise that the state court should have decided that the judgment appealed from did not deal with commerce among the states, and further indicated that it should have to hold the provision in question of the state Constitution void, as applied, if it followed the construction given to it by the state court. While, therefore, not deciding that the clause was void and inoperative as requiring transfer and delivery of interstate commerce, the court left the strongest intimation that such would be the holding were it directly called upon to determine the question. So it is the sweeping requirement of section 27 in my opinion invades the domain of interstate commerce, and the order of the state commission under it is likewise obnoxious to the commerce clause of the federal Constitution.

It follows that the bill of complaint for an injunction states a good cause for such relief, and the temporary injunction heretofore issued should be continued. Such will be the order of the court.

[4] I am not to be understood as holding the entire act to be void and inoperative—very far from it—as the remainder of the act may stand as valid and operative without the provisions of section 27.