# Richmond

BARCROFT WOODS, INCORPORATED v. ROBERT J. FRANCIS.

November 30, 1959.

Record No. 4987.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*L. Lee Bean* and *Herbert Charles Harper* (*Bean & Sizemore,* on brief), for the plaintiff in error.

*David B. Kinney (Murdaugh S. Madden,* on brief), for the defendant in error.

Eggleston, C. J., delivered the opinion of the court.

In a motion for judgment supplemented by an amended motion and bill of particulars, Robert J. Francis, sometimes hereinafter referred to as the plaintiff, brought an action at law against Pomponio Realty Company and Barcroft Woods, Inc., sometimes hereinafter referred to as the defendants, for damages for breach of a written conditional purchase agreement and sales contract whereby the plaintiff alleged that the defendants had agreed to sell to him a lot in Lake Barcroft Estates, to construct a residence thereon, and to landscape the lot; that a lake on which the lot fronted would be "cleaned out by Barcroft Lake Shores, Inc.;" that when the lake had been "lowered" by that concern the defendants would "install" a "sand beach" on the lot; that he, the plaintiff, had agreed to buy and had bought the property upon these terms; and that the defendants had failed to clean out the lake, to install the sand beach, to do the landscaping, and to complete the building in a workmanlike manner.

A demurrer to the motion was overruled and grounds of defense making a general denial of the plaintiff's claims were filed. By consent of all parties a jury was waived and the evidence was heard by the lower court which entered a judgment in favor of the plaintiff against the defendant, Barcroft Woods, Inc., for these items of damages:

For failure to clean out lake and install a sand beach. . . $7,100.00
Failure to panel cinder block walls in basement. . . . . . . .   385.00
Failure to properly paint gravel strip or flashing. . . . . .   140.00
Failure to finish sodding lot. . . . . . . . . . . . . . . . . . . . . . .   300.00

Total. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $7,925.00

There was a judgment in favor of the defendant, Pomponio Realty Company.

Barcroft Woods, Inc., has appealed claiming in substance that the court's finding and judgment against it for the several items of damages are contrary to the law and the evidence.

The facts stated in the light of the lower court's finding are these: The plaintiff, Francis, who lived with his wife and family in the District of Columbia, was desirous of moving to a house in the suburbs. In looking over a model house in the Lake Barcroft area in Fairfax

county, Virginia, he met Lincoln P. Vance, a salesman employed by Pomponio Realty, Inc., a real estate brokerage concern. Vance interested Francis in lot number 683 in section 7 of Lake Barcroft Estates, owned by Barcroft Woods, Inc. A map of the development showed this lot as fronting on a lake, but at the time of the transaction the supposed lake was a marsh through which ran a small stream. Vance assured Francis that the developers of the property were going to clean out the marsh and convert it into a lake and that "Pomponio Realty was going to see that this was done," because it owned a number of other lots in the vicinity. He told Francis that the lots fronting on the lake were more desirable and considerably higher in price than those not adjacent to the waterfront. Francis decided to pay the additional price and buy this particular lot.

Francis had seen in the neighborhood a house which attracted his interest. Vance told him that Arthur Pomponio was a competent builder and through one of his companies would erect on the lot a house substantially similar to that in which he was interested.

Arthur Pomponio and his associates are the principal owners and operators of M. Pomponio & Sons, Inc., engaged in construction work; Pomponio Realty, Inc., the real estate brokerage firm with which Francis was dealing; and Barcroft Woods, Inc., which owned seventy-two lots in the area, including that which Francis desired to purchase.

While Pomponio finally ratified the proposed agreement between his organization and Francis, before doing so he suggested that Francis see Joseph V. Barger, the original developer of Lake Barcroft Estates, and assure himself that a lake would be constructed bordering on the desired lot. Francis went with Vance, the real estate agent, to see Barger and both testified that Barger assured them that the lake would be constructed and that the water would be "lowered" in the summer months so that the sand beach desired by Francis could be constructed on the lot.

Barger, the original developer of the subdivision, did business through several corporations. One of these was Barcroft Lake Shores, Inc., which had owned and sold to Barcroft Woods, Inc., the Pomponio company, the lots in the development, including that which Francis had agreed to buy. Another of Barger's corporations was Barcroft Beach, Inc., which he testified held "title" to the "lake" and without whose permission neither Barcroft Lake Shores, Inc., nor any of the Pomponio companies could clear, dredge out, or lower the water in the lake. The relation of these companies to the property

was not made known to Francis.  While Barger did not deny that the map displayed in his office showed that the Francis lot fronted on a lake, he denied that he had promised or represented to Francis or Vance that the supposed lake would be constructed by any of his (Barger's) companies.

After the interview between Barger, Francis and Vance, the two contracts which are the basis of this suit were executed in May, 1955. One of these was a sales contract whereby Barcroft Woods, Inc., as seller, through Pomponio Realty, Inc., its agent, agreed to sell to Francis, and he agreed to buy, the lot with "improvements" thereon for the sum of $46,000, of which $8,650 was represented by Francis's equity in a residence in Washington, D. C., and the balance of which was to be paid in monthly installments.  This agreement contained these further provisions:  "House to be built to be the Trendsetter with all cinder block walls in basement to be paneled. * * * Lot is to be completely finished including sodding, shrubbery, and with a sand beach installed. * * * It is further understood that the lake is to be 'cleaned out' up to lot 685 by Barcroft Lake Shores, Inc.  Beach is to be 40' wide and not to be installed until lake is lowered by Barcroft Lake Shores, Inc."

At the same time that the sales contract was executed Francis and his wife executed a conditional purchase agreement whereby they agreed to buy the property for the stated price and upon the same terms stated in the sales contract.

A house of the type desired by Francis was constructed on the lot by M. Pomponio & Sons, Inc., during the summer of 1955, and possession was taken by Francis on October 29 following.  In the spring of 1956, Francis complained to Pomponio Realty, Inc., that the lake had not been cleaned out and the sand beach installed as required by the terms of his contract, and that there were certain defects in the construction of the building which should be remedied.  M. Pomponio & Sons, Inc., the construction company, replied that these matters had been inquired into and it had been assured that Barger would construct the lake.  However, this was not done.

Francis testified that despite his continued protests the builder failed to complete the construction work in accordance with the terms of the contract.  In the fall of 1956 the present suit was instituted.

The main contention of the defendant, Barcroft Woods, Inc., is that according to the language of the contracts sued on it was the obligation of Barcroft Lake Shores, Inc., to clean out and construct

the lake, and that there was no obligation on the defendant to see that such work was done. We do not agree with this contention. According to the evidence on behalf of the plaintiff, he paid a premium price for this lot based upon the promise made to him by the agent of the defendant that the lake would be constructed, and such promise was a substantial part of the consideration for his purchasing it. It is true that Francis was assured during his interview with Barger that this would be done. And so was Vance, the selling agent of the defendant, who wrote into the contracts the provision that, "It is further understood that the lake is to be 'cleaned out' * * * by Barcroft Lake Shores, Inc." The use of the words, "It is * * * understood," in this connection was to say that the parties had so "agreed." See 3 C. J. S., Agree, p. 355, note 2 and cases cited.

Since Francis was dealing with the defendant, Barcroft Woods, Inc., from whom he was purchasing the property and to whom he was bound to make payment, it is clear that the purpose of the provision was to bind the defendant for the construction of the lake by Barcroft Lake Shores, Inc.

Contracts frequently carry provisions whereby the promisor binds himself to procure the performance of an act by a third party. It is well settled that the inability of the promisor to control the actions of the third party does not release the promisor from the obligation. As is said in 12 Am. Jur., Contracts, § 370, pp. 941, 942, "One who engages for the act of a stranger must procure the act to be done, and the refusal of the stranger without the interference of the other party to the contract is no excuse. The performance of an absolute promise is not excused by the fact that a third person refuses or fails to take action essential to performance." See also, Williston on Contracts, Rev. Ed., Vol. 6, § 1932, pp. 5413, 5414.

Upon the same principle the defendant was not relieved of the obligation to install a sand beach on the lot because the contract provided that such work was not to be done "until lake is lowered by Barcroft Lake Shores, Inc.," and because the latter company refused to do this. This promised improvement was likewise a material part of the consideration for the plaintiff's agreeing to purchase the lot.

In *Lehigh, etc., Co.* v. *Virginia Steamship Co.*, 132 Va. 257, 267, 111 S. E. 104, we quoted with approval this controlling principle: "The rule appears to be that if one undertakes unconditionally to perform an act which is not inherently impossible, but merely requires the acquiescence or consent of a third party, or the performance of

a preceding act by the latter, the nonperformance is not ordinarily excused by the fact that it subsequently proves impossible for the promisor to comply with the contract, because of the refusal of the third party to give his consent or perform the act; in other words, the contract will not, merely from the fact that acquiescence in or performance of an act by a third party must precede compliance therewith, be construed as conditional upon such acquiescence or performance. * * * " See also, Williston on Contracts, Rev. Ed., Vol. 6, § 1932, pp. 5413, 5414.

■ Complaint is made that the lower court improperly measured the plaintiff's damages for the failure of the defendant to have the lake constructed and the sand beach installed by the difference in the value of the property with and without such improvements. One ready answer is that without objection by the defendant the case was tried on this theory and both sides offered evidence on the issue. It is too late for the defendant to say on appeal that the proper measure was the estimated cost of making the improvements.

But aside from this, it is obvious that since title to the lake was held by one of Barger's corporations which had declined to cooperate in making the improvements, the defect was not remediable from a practical standpoint in that manner, and hence the difference in value was the proper rule. See *Mann* v. *Clowser*, 190 Va. 887, 904, 59 S. E. 2d 78, 86; Williston on Contracts, Rev. Ed., Vol. 5, § 1363, pp. 3825, 3826. There is ample evidence to support the lower court's finding that such difference in value was $7,100.

The evidence is equally sufficient to support the court's findings as to the small items of damages for failure to panel the cinder block walls, to paint the gravel strip, and to finish the sodding.

■ The final contention of the defendant is that the plaintiff waived his claims for defects in the construction work on the house by taking possession of and occupying it in October, 1955, without mention of such defects. This contention is equally without merit. It is elementary that a waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights. *Security Loan Co.* v. *Fields*, 110 Va. 827, 832, 67 S. E. 342.

The evidence here fully sustains the finding of the lower court that there was no waiver. As had been said, after Francis took possession of the property he continued to protest to the defendant that it had not complied with its contract with him, both as to the construction of the lake and correcting the defects in the building. He

did this by a letter dated March 27, 1956, to which the defendant replied within a few weeks. The defendant did not take the position that the matters of which the plaintiff now complains had been waived by his acceptance of the property. On the contrary, the defendant admitted that there were deficiencies in the performance of the contract and that steps would be taken to remedy these.

On the whole we find no error in the judgment complained of, and it is

*Affirmed.*