FRANK R. FORD CO., INC., Appellee,

v.

EASTERN SMELTING & REFINING CORP., Appellant.

No. 81–1945.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1982.

Decided May 13, 1982.

B. Thomas Reed, Norfolk, Va. (William M. Harris, Norfolk, Va., and Chris Drucas, Salem, Mass., on brief), for appellant.

Henry L. Sadler, III, Norfolk, Va., for appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and ROBERT D. POTTER, United States District Judge for the Western District of North Carolina, sitting by designation.

POTTER, District Judge.

The silver market was extremely volatile between December, 1979 and March, 1980. It was just prior to this time period that the Appellee, Ford, contracted with the Appellant, Eastern, to refine its scrap silver into fine silver and to await instructions from Ford as to further disposition. Eastern followed Ford's instructions, but its delay in performance was held by the district court to constitute a breach of contract. We find no error in that holding; however, we conclude that the district court erred as a matter of law in awarding damages. We therefore affirm in part and reverse in part.

BACKGROUND

The following findings of the district court are supported by substantial evidence.

Pursuant to telephone conversations, the Appellee, Ford, a retail jewelry business in Norfolk, Virginia, shipped 56.5 pounds of silver scrap to the Appellant, Eastern, a silver refiner, on November 10, 1979, for the purpose of having it refined into fine silver. Ford was notified by Eastern on December 7, 1979, that its silver had been refined and produced 690.01 troy ounces of fine silver, and that the silver was being held for the Ford account. Under the contract, Eastern was to refine and hold the silver until Ford requested Eastern to: (1) return the silver to Ford, (2) ship the silver to a third-party, or (3) tender an offer of purchase to Ford and, if Ford accepted, mail a check to Ford for the quoted price of the silver.

Ford requested Eastern to tender offers from time to time but never accepted any quoted price. The first serious demand by Ford for the silver was made on January 15, 1980, when Ford telephoned Eastern and requested shipment of the silver to a third party; however, Eastern required written authorization for such a transaction. On January 17, 1980, Ford requested the direct return of the refined silver in ingot form. This was the first specification of the form the refined silver was to take, grain or ingot.

Throughout telephone conversations between January 17 and January 24, Ford was advised by Eastern that silver grain was available, but that because of their heavy load, the processing of ingots would be delayed. On January 24, 1980, Eastern wrote Ford a letter of confirmation of Ford's order for ingots, stating that Ford's "silver bars are being fabricated per your request. Once the factory work order has been completed, these silver bars will be shipped to you promptly." The letter stated Eastern's "regret that there has been some delay in our completing your factory work order, due to the current inundation of refining shipments in our plants," explaining that Eastern did "not maintain a shelf of readily available silver bars, but rather, [processed bars] on a special-order basis." The bar fabrication could be completed in one hour.

Three months later, on April 24, 1980, Ford's factory work order was reached and processed. On May 6, 1980, the bars were delivered, short 38.764 ounces. The district court ordered the return of the remaining silver.

■ The district court found that although no time was specified for the performance of Eastern's contractual duty to fabricate the bars and return the silver, a reasonable time for performance under the circumstances would have been two to three weeks, placing shipment of the bars in February, 1980. The three-and-one-half month delay constituted failure to perform con-

tractual duties within a reasonable time under the circumstances.[1]

## DAMAGES

Although Ford was awarded lost profits which it alleged to have suffered as a result of Eastern's breach of contract, there was no discussion by the court of proximate causation, foreseeability, or certainty. It is implicit in the district court's holding, however, that the court found the loss in profits experienced by Ford to be the result or consequence of Eastern's breach of the contract. We disagree.

Ford was awarded the difference between the market price of silver in February, when performance should have occurred, and the market price in May, when the silver was delivered. However, that loss in profits was not proximately caused by Eastern's breach of contract. Eastern did not prevent Ford from obtaining its silver in February and selling it at that month's price. Eastern merely prevented Ford from obtaining its silver *in bar form* during February.

Ford was informed in January of the delay necessitated by the processing of the silver ingots. The prospect of continued delay was reinforced in a series of exchanges by telephone and letter between Ford and Eastern from January 24th through February 12, 1980. During this time period, Ford made the business decision to await the silver ingots and not accept either the equally available, readily marketable silver grain or Eastern's daily quoted price for the silver. This business decision broke the chain of causation between the wrongful act of Eastern and the loss of profits by Ford.

To recover the alleged lost profits, Ford had the burden of proving that they were the natural consequence of the breach of contract. See, *Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 535,

201 S.E.2d 758, 767 (1974); *Manss-Owens Co. v. H. S. Owens & Son*, 129 Va. 183, 201, 105 S.E. 543, 549 (1921); 5B Mich.Jur. 385, *Damages* § 20 n.20 (1979). However, Ford failed to meet this burden.[2] Eastern was ready and willing to produce silver grain or tender its daily quoted price to Ford during the months of January and February. Thus, Eastern's delay in fabricating the silver ingots was not the proximate cause of Ford's loss of profits which selling during those months would have brought. Rather, it was Ford's business decision to await the fabrication of the silver ingots which caused Ford's loss in profits. Ford is entitled only to nominal damages for the failure of Eastern to fabricate the bars within a reasonable time period.

Accordingly, the finding of a breach of contract is affirmed; however, the award of damages by the district court is vacated and we remand for the award of nominal damages to Ford.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

1. The district court based its opinion upon the theory of breach of contract. Appellee has argued on appeal that Eastern converted property held in bailment. Since we have affirmed the finding of Eastern's breach of the contract, we need not reach the bailment issue, not determined below.

2. Since we hold that the recovery of damages in this case is barred on the basis of causation, we voice no opinion as to the foreseeability or certainty of the damages in this case.