# R. A. GRAHAM, III, ET AL.

## V.

# VIRGINIA ELECTRIC AND POWER COMPANY, ET AL.

Record No. 841850

November 27, 1985

Present: Carrico, C.J., Cochran, Poff, Compton, Stephenson, and Russell, JJ., and Harrison, Retired Justice

Joseph W. Richmond (Matthew B. Murray; Richmond and Fishburne, on brief), for appellants.
Deborah Vinson Ellenberg; Guy T. Tripp, III (Lewis S. Minter; JoAnne Lewis Nolte; Hunton & Williams, on briefs), for appellants.

CARRICO, C.J., delivered the opinion of the Court.

In 1980, the State Corporation Commission denied approval to the rebuilding of an electric transmission line according to certain specifications but, in 1984, approved the reconstruction of a portion of the line according to different specifications. The question presented is whether, under principles of res judicata and collateral estoppel, the later approval was barred by the previous disapproval.[1] The question is here against the following background:

On October 2, 1978, Virginia Electric and Power Company (Vepco) filed with the Commission an application (Application 99) for permission to rebuild its transmission line running from Charlottesville through Gordonsville to Remington. Several interested landowners, including R. A. Graham, III, one of the appellants here,[2] protested the application. The Commission denied the application, and we affirmed the denial on appeal. *VEPCO v. Citizens*, 222 Va. 866, 284 S.E.2d 613 (1981).

On December 27, 1982, Vepco filed a new application (Application 126), this time asking for permission to rebuild the portion of

---

[1] The parties treat the terms "res judicata" and "collateral estoppel" synonymously. We will give the terms the same treatment.

[2] The other appellants are R. A. Graham, Jr., Archibald Craige, Sidney Kerr, Mrs. Harold H. Hallock, Sr., Anne R. Barnes, Mary P. Massey, Margaret Anderson, M. Lawrence Aspden, Florence Robinson Cox, Albert J. Lawson, Thomas B. Merrick, III, Lawrence Ison, Peter Hunt, Mrs. Peter Hunt, Robbie Coles, Edward J. Coles, Dr. Trent Laviano, Mrs. Trent Laviano, John A. Chester, Mrs. John A. Chester, Caroline Gehman, and Audrey L. Bird.

the line running from Charlottesville to Gordonsville. R. A. Graham, III, and a number of other protestants, some of whom are appellants here (collectively, Graham), moved to dismiss Application 126 on the ground that "either under the doctrine of *res adjudicata* or . . . the doctrine of collateral estoppel," the Commission's action in denying Application 99 barred consideration of Application 126. The Commission denied the motion and approved Application 126, with certain changes not relevant here.

In Application 99, Vepco proposed to rebuild the Charlottesville-Gordonsville-Remington line, utilizing existing rights of way within a corridor established in the 1920's. Under the proposal, the existing single-circuit 115 kilovolt (kv) line would have been replaced with a double-circuit 230 kv line.

A hearing examiner heard the issues raised by Application 99. The examiner reported that there was a need for additional electrical service in the area affected. He reported further, however, that Vepco had not shown its proposal "would reasonably minimize adverse impact on the scenic, environmental and historic assets of the area"[3] and had not established "its method . . . to be the most reasonable alternative for meeting the . . . needs." Holding that Vepco had not carried its burden of proving its proposed route would reasonably minimize scenic and environmental impact, the Commission denied Application 99.

In Application 126, Vepco proposed to rebuild only the Charlottesville to Gordonsville portion of the line. Under the proposal, the existing single-circuit 115 kv line would be replaced with a single-circuit 230 kv line.

The same hearing examiner heard the issues raised by Application 126. With respect to Graham's motion to dismiss, the examiner stated that "[i]n order for the principle of collateral estoppel to operate, a party must first show that the facts of the previous case are substantially similar to the current case." The examiner then found that "[a] comparison of this record and the record of the previous case demonstrates conclusively that the two factual situations are quite different." The examiner concluded that the motion to dismiss should be denied.

---

[3] Under Code §56-46.1, Commission approval is required for the construction of electric transmission lines of certain voltages. As a condition to approval, the Commission must determine that the corridor or route the line is to follow will reasonably minimize adverse impact on the scenery and environment of the area affected.

Concerning the merits of Application 126, the hearing examiner found that the proposal contained in the new application, with one exception not relevant here, was "a much less intrusive and far more acceptable proposal" than the one advanced in Application 99. The examiner found further that the proposed new Charlottesville-Gordonsville line not only was needed[4] but also was "an environmentally acceptable method of meeting such need, and would reasonably minimize adverse impact on the scenic, environmental and historic assets of the area concerned."

The Commission adopted "all of the findings, conclusions and recommendations set forth in the Report of the Hearing Examiner." The Commission then approved the construction of a single-circuit 230 kv transmission line from Charlottesville to Gordonsville, with the one exception noted by the hearing examiner.

On appeal, Graham contends that in passing upon applications for additional transmission facilities, the Commission acts in a judicial, rather than a legislative, capacity. When the Commission acts in its judicial role, Graham submits, "its actions are governed . . . by the doctrines of collateral estoppel and *res judicata.*"

On the other hand, the Commission contends that it acted in a legislative capacity "when it reviewed the environmental impact of the proposed line under Va. Code Ann. §56-46.1" and, therefore, that its action is not subject to the doctrines of res judicata and collateral estoppel. For its part, Vepco says that Graham's arguments "concerning judicial versus legislative actions of the Commission are irrelevant because there is no factual basis . . . for applying *res judicata* or collateral estoppel."

We agree with Vepco that it is irrelevant whether the Commission acted in a judicial or a legislative capacity. Even if we assume that the Commission acted in its judicial capacity, it does not follow that Graham's motion to dismiss should have been granted.

Concerning the adjudicatory function of the Commission, we have said that only those matters which are in issue and decided by the Commission may be considered conclusive for res judicata or collateral estoppel purposes. In *Appalachian Power Co.* v. *Walker*, 214 Va. 524, 201 S.E.2d 758 (1974), Walker, a corporate developer, brought an action for damages against Appalachian for its failure to install electrical service underground free

---

[4] The issue of need is conceded on appeal and, therefore, will not be discussed further.

of charge, as it allegedly had agreed to do. Appalachian filed a plea of res judicata, asserting that Walker previously had filed a petition with the Commission praying for an order requiring Appalachian to honor its contract and that the Commission had denied the petition. In the damage action, the trial court denied the plea of res judicata, and Walker recovered judgment against Appalachian.

One of the issues on appeal was whether the order of the Commission denying Walker's petition was res judicata. We said that even if we could assume "the Commission had jurisdiction to adjudicate Walker's common law contract claim, that claim was not alleged in Walker's petition to the Commission nor decided by the Commission's order." *Id.* at 534, 201 S.E.2d at 766. We concluded that "the Commission's . . . order cannot be res judicata in respect to Walker's circuit court action." *Id.*

We have also said:

> "The true test of the conclusiveness of a former judgment with respect to particular matters is identity of issues. If a particular point or question is in issue in the second action, and the judgment will depend on the determination of the particular point or question, a former judgment between the same parties will be final and conclusive in the second [action] if that same point was in issue and adjudicated in the first suit."

*Storm* v. *Nationwide Ins. Co.,* 199 Va. 130, 134, 97 S.E.2d 759, 761 (1957) (citations omitted). And an appropriate test for determining the identity of issues involved in former and subsequent actions is " 'whether the same evidence will support both actions.' " *Pickeral* v. *Federal Land Bank*, 177 Va. 743, 751, 15 S.E.2d 82, 85 (1941).

Here, as the hearing examiner found with respect to Graham's motion to dismiss, "[a] comparison of this record and the record of the previous case demonstrates conclusively that the two factual situations are quite different." In the first place, the proposal in Application 99 was for a transmission line running from Charlottesville through Gordonsville to Remington, a distance of 54.1 miles, while the proposal in Application 126 was for a line between Charlottesville and Gordonsville, a distance of only 15.9 miles.

Further, Application 99 proposed a double-circuit 230 kv line strung on steel "H" frames averaging 90 feet in height and 52 feet in width at the crossarms, or approximately 41 feet taller and 25 feet wider than the existing wooden structures. The instant plan is for a single-circuit 230 kv line placed on "predominantly" wooden "H" frames averaging 55.6 feet in height and 36 feet in width at the crossarms, or only 6.7 feet higher and 9 feet wider than the existing structures. Finally, as the hearing examiner also found, "the environmental and scenic impact of the present proposal will be vastly different [from] that of the previous one."

Graham argues, however, that under this Court's interpretation of Code § 56-46.1 in *Campbell County* v. *Appalachian Pow. Co.,* 216 Va. 93, 215 S.E.2d 918 (1975), the Commission had the authority in disposing of Application 99 to consider not only the proposal advanced by Vepco but also certain alternative proposals which were described in the evidence and advanced by the protestants.[5] The Commission did consider alternatives, Graham maintains, and determined that "among the feasible alternatives . . . construction of double circuit or single circuit 230 kv lines in the Charlottesville to Gordonsville corridor was unreasonable." Indeed, Graham asserts, the Commission specifically "considered and rejected[,] in Application #99[,] Alternative 3 which contemplated placing a single circuit 230 kv line in the Charlottesville-Gordonville corridor," the very same proposal Vepco advanced in Application 126.

▮ At this point, it is necessary to articulate what issues the Commission decided and what issues it did not decide in disposing of Application 99. The Commission decided only that Application 99 should be denied specifically because the proposal therein made "would not reasonably minimize adverse impact on the scenic and environmental assets of the area concerned." The Commission neither found "unreasonable" nor "rejected" any alternative proposal. Instead, the Commission declined to make any finding concerning alternative proposals for two clearly expressed reasons:

---

[5] In the *Campbell County* case, the Commission selected a route for a transmission line from among several alternative proposals. Before selecting the route, however, notice was given to interested officials and persons, who participated fully in the hearing on the alternative finally selected. This procedure was not followed in the present case and, as will be seen *infra*, the omission, in the opinion of the Commission, was critical.

We . . . conclude that the record in this case is insufficient to enable us to determine the most preferable route. Even those alternative routes herein proposed have not been considered as fully as the one advanced by Company. . . . Moreover, to the extent that the proposed alternatives would impact entirely different land areas, we conclude that notice in the present proceeding is totally inadequate to meet the requirements of § 56-46.1.

Hence, the issues Graham sought to foreclose in the proceedings on Application 126 were not decided by the Commission in its disposition of Application 99. The order denying Application 99, therefore, did not create a bar to the Commission's consideration of Application 126, and we will affirm the order granting that application.

*Affirmed.*