911 F.2d 723
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
McDEVITT & STREET COMPANY, Plaintiff-Appellant,
v.
MARRIOTT CORPORATION, Defendant-Appellee.
McDEVITT & STREET COMPANY, Plaintiff-Appellee,
v.
MARRIOTT CORPORATION, Defendant-Appellant.
 Nos. 89-2099, 89-2111.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1990.
Decided Aug. 17, 1990.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CA-88-102-A)
 Edward Graham Gallagher, Thompson, Larson, McGrail, O'Connell & Harding, Washington, D.C., for appellant.
 Andrew David Ness, Morgan, Lewis & Bockius, Washington, D.C., for appellee.
 E.D.Va., 713 F.Supp. 906.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 In this contract action, McDevitt and Street Company ("McDevitt"), the general contractor on a hotel building project, sued Marriott Corporation ("Marriott") for the unpaid portion of the contract between the parties. Marriott counterclaimed for damages arising out of construction delays. After a bench trial, the district court made numerous and extensive rulings on each facet of the delays and the respective liabilities of the parties. McDevitt appeals the denial of some of its claims and the grant of certain of Marriott's counterclaims. Marriott cross-appeals the denial of one of its counterclaims. We reverse the order as to the denial of two of McDevitt's claims, and we affirm the denial of the remainder of its claims as well as the denial of the counterclaim. Because the reversal necessitates the recalculation of all of the delay-related damages, we remand for further proceedings.
 
 I.
 
 2
 McDevitt contracted with Marriott to construct a hotel in Herndon, Virginia. The contract called for completion by December 21, 1986. The hotel was not completed until May 1, 1987. The adjusted contract price was $4,946,668; Marriott, citing the extra costs and losses incurred due to this 132-day delay, which it asserted was entirely McDevitt's fault, withheld $424,998 from the contract price.
 
 
 3
 McDevitt then filed this diversity action for the withheld amount.[1] The gist of McDevitt's claim was that the entire delay in completion was the fault of Marriott. Marriott counterclaimed for, inter alia, management fees lost as a result of the delay in the opening of the hotel. After a bench trial, the district court entered an order that essentially laid the entire 132-day delay at McDevitt's feet and offset the agreed-upon contract figure by various delay-related costs incurred and losses suffered by Marriott.
 
 
 4
 McDevitt's claim was for contract damages, i.e., the unpaid portion of the construction contract. Inasmuch as Marriott received a hotel which met contract specifications, albeit later than planned, the contract price is not in dispute. What is disputed are issues of responsibility for the various delays. After the length of delay for which McDevitt was to be held responsible was determined, the court had to quantify each component of Marriott's loss, e.g., lost rental fees. Marriott's losses were then deducted from the contract price, and this figure was compared to the amount actually paid to McDevitt. The district court found that the total amount due McDevitt under the contract was $514,986.68, and that McDevitt's breaches of the contract left it liable to Marriott in the amount of $416,823.00. Therefore, the final judgment below was an award to McDevitt for $98,163.68. We find error in only two aspects of the district court's order. First, the court erroneously held McDevitt liable for the 19-day delay involving the question of what type of foundation to use in Building D. Second, the lower court should have offset the lost-interest award to Marriott by the interest earned on amounts retained by Marriott due to the delay. We discuss each in turn.
 
 
 5
 The construction contract provided for extensions of the completion date if delays in construction were caused by "any act or neglect" of Marriott. McDevitt's complaint claimed that it was entitled to a 19-day extension because of Marriott's inaction in deciding whether to use a structural form or a slab-on-grade foundation in one of the hotel buildings. A finding in McDevitt's favor would reduce the delay for which it could be held responsible (from 132 to 113 days), and this in turn would act to proportionately reduce each of the delay-related components of the judgment. Allocation of responsibility is primarily a finding of fact, and we review the trial court's factual determinations under a "clearly erroneous" standard. Fed.R.Civ.P. 52(a).
 
 
 6
 On this issue, the court found that on August 8, 1986, McDevitt submitted a written request for a final decision from Marriott on whether to use a slab-on-grade or a structural slab in Building D of the project. Inadequate compaction in the structural fills at two other sections of the complex had previously resulted in the use of structural slabs instead of the slab-on-grade called for in the contract, and, according to the court, uncertainty still remained regarding Building D. Marriott responded to the request on August 20 to say only that additional information would be forthcoming from a structural engineering firm. Marriott then tentatively approved the slab-on-grade pending confirmation of suitability by Soils Consultants, Inc., a company which had tested the soil on May 7 and whose May 28 report approved the use of slab-on-grade. Upon receiving this confirmation, McDevitt immediately began installing slab-on-grade on September 2.
 
 
 7
 In the conclusions of law, the district court stressed that McDevitt waited until August 8 to "formally" bring to Marriott's attention the potential need for a structural slab in Building D. The court concluded that Marriott responded with "reasonable promptness" and, therefore, that McDevitt failed to demonstrate that the delay was excusable.
 
 
 8
 There is no dispute that the delay from August 14 to September 2 constituted a 19-day delay in the project's "critical path." It is also undisputed that McDevitt was prepared to begin installing the slab-on-grade on August 14. After consideration of all the circumstances surrounding the delay, we hold that it was clear error to hold McDevitt responsible for any portion of this delay.
 
 
 9
 The construction contract specified that the Marriott representative was to be the sole judge of whether adequate soil compaction existed. The compaction issue had arisen with regard to two other sites at which structural slabs were used instead of slab-on-grade, and the Building D site had been tested some three months earlier. In fact, representatives from Marriott's engineering firm, Meyer Associates, were present at the May 7 soil test, and, in a letter to Marriott of the same date, Meyer informed Marriott of possible compaction problems. Meyer even submitted a design for a structural slab to Marriott a full month prior to the beginning of the delay. The potential for a problem, then, was evident to Marriott or its representatives for months prior to August 14. Any problems were in the eyes of Meyer, the firm retained by Marriott. McDevitt's consultant on the issue, however, tested and found adequate compaction, and this view remained unchanged from May 7 through the date on which Marriott decided to authorize slab-on-grade. The district court's focus on the August 8 request fails to give proper weight to events leading up to this "formal" request for a decision.[2] We hold that the lower court's ruling that the delay was McDevitt's fault was clear error, and we therefore reverse with regard to this 19-day delay component of the final damage award.
 
 III.
 
 10
 Another delay-related component of the final award was based on the loss of interest on the sales price.[3] Since the sale by Marriott was delayed by 132 days, the district court ruled that Marriott was entitled to interest on the sales price for the period of time it was deprived of this amount. We find no error in this ruling as far as it goes. However, McDevitt contends that the interest amounts should be offset by interest earned by Marriott on the portion of the contract price retained by Marriott because of the delay. We agree.
 
 
 11
 It is black letter law that damages for a breach of contract are intended to put the non-breaching party in the position he would have been in had the breach not occurred. Appalachian Power Company v. John Stewart Walker, Inc., 201 S.E.2d 758, 767 (Va.1974). The district court's award put Marriott in a substantially better position. On remand, the lost interest figure should be recomputed to allow for the retainage during the delay.[4] Of course, the delay in the sale date should also be adjusted to take into consideration the reduction in the delay period for which McDevitt is responsible.
 
 IV.
 
 12
 The delay for which McDevitt may be held responsible is reduced by 19 days, and McDevitt should be given credit against the lost use-of-sales-proceeds interest damages for the interest earned by Marriott on the contract amounts retained due to the delay. Subject to adjustments based on the 19-day reduction in the delay period, all other portions of the district court's order are affirmed on the reasoning of the district court.
 
 
 13
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 Subsequent to the filing of the complaint, the parties agreed on certain contract adjustments, none of which are material to the issues on appeal
 
 
 [2]
 By noting in its Memorandum Opinion that Marriott never "explicitly informed" McDevitt not to use slab-on-grade, the district court implied that McDevitt would have been free to install such a foundation without prior authorization. This misconstrues the agreement of the parties as to how such matters were to be handled. Indeed, Marriott does not argue that McDevitt would have been free to proceed prior to September 2
 
 
 [3]
 In a complex set of transactions, Marriott was to transfer ownership of the completed hotel to Marriott Limited Partnership for $7,745,000
 
 
 [4]
 McDevitt also complains of arithmetical errors in the court's computation of the lost use-of-sales-proceeds figures. In view of the need for extensive recalculations occasioned by our judgment, we believe it is unnecessary to address this claim