PRESENT:  All the Justices

VERIZON VIRGINIA LLC

OPINION BY
v.  Record No. 230400                    JUSTICE WESLEY G. RUSSELL, JR.
                                         NOVEMBER 30, 2023
STATE CORPORATION COMMISSION, ET AL.


FROM THE STATE CORPORATION COMMISSION

Verizon Virginia LLC ("Verizon") appeals the State Corporation Commission's

("Commission") decision dismissing Verizon's petition for a declaratory judgment for lack of

subject matter jurisdiction.  Verizon argues that the Commission has subject matter jurisdiction

over its petition pursuant to Code §§ 33.2-1815(B) and 33.2-1821.  For the reasons that follow,

we disagree with Verizon and affirm the judgment of the Commission.

I.  Background

Verizon is a telecommunications company that operates utility facilities, some of which

are located on public rights-of-way in accordance with permits issued by the Virginia

Department of Transportation ("VDOT").  These permits provide that VDOT can require

Verizon to move these facilities at no cost to VDOT.

Pursuant to the Public-Private Transportation Act ("PPTA") (Code § 33.2-1800 *et seq*.),

VDOT entered into an agreement with Capital Beltway Express LLC ("CBE"), the "private

entity,"[1] regarding a project, designated the 495 NEXT Project, to extend portions of the I-495

express lanes.  CBE and VDOT's respective rights and obligations related to the project are

_____

[1] For the purposes of the PPTA, "private entity" is a defined term and references the
entity, whether a "natural person, corporation, general partnership, limited liability company,
limited partnership, joint venture, business trust, public benefit corporation, nonprofit entity, or
other business entity[,]" which has partnered with a "public entity" in a project under the PPTA.
Code § 33.2-1800.

governed by a "Comprehensive Agreement," which, in pertinent part, requires that VDOT provide CBE "the benefit of any . . . permits or other rights in real property affecting the Project which require the holders of such real property rights to relocate at their expense[.]"

In performance of its obligations under the Comprehensive Agreement, CBE employed The Lane Construction Corporation ("Lane") as its design-build contractor. Although Lane has a contractual agreement with CBE related to the 495 NEXT Project, it is not a party to the Comprehensive Agreement.

The construction of the 495 NEXT Project required the relocation of four Verizon facilities located in public rights-of-way affected by the project. CBE did not provide notice to the Commission that the 495 NEXT Project would require Verizon to move its facilities. Although Verizon and the other parties "cooperat[ed] fully . . . to plan and arrange the manner of the . . . relocations[,]" the parties could not agree "on who should bear the costs of the utility relocations."

Consistent with Commission rules, Verizon filed a petition for a declaratory judgment with the Commission, naming CBE and Lane as respondents, requesting that the Commission declare that either CBE or Lane, insofar as Lane contracted with CBE to pay the costs, is responsible for the relocation costs pursuant to Code § 33.2-1815(B). Verizon's petition only sought a declaration of who was responsible for the payment of the relocation costs; it did not seek a declaration or other determination regarding the manner in which the relocations were to be performed or the amount of costs or damages related to the relocations. Verizon asserted (and continues to assert) that Code §§ 33.2-1815(B) and 33.2-1821 grant the Commission subject matter jurisdiction to resolve the "who pays" question.

2

CBE and Lane filed answers denying any liability for the relocation costs and asserting that the Commission lacked subject matter jurisdiction to determine which entity ultimately was responsible for those costs. Subsequently, the Commonwealth of Virginia, VDOT, and Stephen C. Brich, Commissioner of Highways (hereinafter collectively "VDOT"), sought to intervene in the matter. In addition to seeking intervention, VDOT asserted that Verizon was responsible for the costs of the relocations.

In a February 2, 2023 order, the Commission granted VDOT's motion to intervene. It also ordered that "Verizon . . . file a pleading addressing the subject matter jurisdiction of the Commission to hear this matter." The Commission did not direct the parties to address whether it had discretion to exercise jurisdiction under any provision of Code § 33.2-1815(B), and none of the parties did so.

The Commission entered an order dismissing Verizon's petition based on its determination that it lacked subject matter jurisdiction to resolve the dispute. Specifically, the Commission concluded that, although Code § 33.2-1815(B) granted it jurisdiction to resolve certain, specific matters related to utility relocations caused by PPTA projects, Verizon's "who pays" claim sounded in contract and "there is no directive in [Code § 33.2-1815(B)] permitting the Commission to determine who should pay under contract for the utility relocations complained of by Verizon."

Pursuant to Rule 5:21, Verizon filed an appeal of right with this Court challenging the Commission's conclusion that it lacked subject matter jurisdiction over the dispute. Specifically, Verizon contends, as it did below, that Code §§ 33.2-1815(B) and 33.2-1821 grant the Commission jurisdiction to resolve which party is responsible for the costs of the utility relocations necessitated by the 495 NEXT Project.

## II.  Analysis

### A.  Standard of review

Subject matter jurisdiction "refers to a [tribunal]'s power to adjudicate a class of cases or controversies[.]" *Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019) (quoting *In re Commonwealth*, 278 Va. 1, 11 (2009)).  It "is the authority granted through constitution or statute to adjudicate a class of cases or controversies[.]" *Morrison v. Bestler*, 239 Va. 166, 169 (1990).  Because subject matter jurisdiction "can only be acquired by virtue of the Constitution or of some statute[,]" *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) (quoting *Humphreys v. Commonwealth*, 186 Va. 765, 772 (1947)), determining whether a tribunal possesses it involves constitutional and statutory interpretation, which constitute questions of law "subject to de novo review in this Court." *Anderson v. Clarke*, No. 230172, 302 Va. ___, ___, ___ S.E.2d ___, ___, 2023 WL 6627441, at *3 (Va. Oct. 12, 2023).  As a result, Verizon's "challenge to the [Commission]'s determination that it lacked [subject matter] jurisdiction over" this matter "presents a question of law subject to de novo review in this Court." *Ashland, LLC v. Virginia-Am. Water Co.*, 301 Va. 362, 368 (2022).

### B.  Jurisdiction of the Commission and circuit courts

Created by the Virginia Constitution, the Commission "has been clothed with legislative, judicial and executive powers." *Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 528 (1974) (quoting *Clifton Forge-Waynesboro Telephone Co. v. Commonwealth*, 165 Va. 38, 47 (1935)).  Subject to certain constitutional and statutory limitations, the Commission is charged with "issu[ing] all charters, and amendments or extensions thereof, of domestic corporations and all licenses of foreign corporations to do business in this Commonwealth[,]"

4

"administering the laws made in pursuance of this Constitution for the regulation and control of corporations doing business in this Commonwealth[,]" "regulating the rates, charges, and services and, except as may be otherwise authorized by this Constitution or by general law, the facilities of railroad, telephone, gas, and electric companies." Va. Const. art. IX, § 2. In addition to these duties, it "shall have such other powers and duties not inconsistent with this Constitution as may be prescribed by law." *Id*.

As a general matter, the Commission has not been granted the authority to resolve contract actions. *See Ashland, LLC*, 301 Va. at 372 n.5 (collecting cases holding that the Commission lacks jurisdiction to resolve contract disputes between a regulated utility and its customers). Contract actions generally are heard in the trial courts of the Commonwealth. *See* Code § 17.1-513 (providing that circuit courts "shall have original and general jurisdiction of all civil cases, except cases upon claims to recover personal property or money not of greater value than $100, exclusive of interest, and except such cases as are assigned to some other tribunal; . . . and also, of all cases, civil or criminal, in which an appeal may be had to the Court of Appeals"). "To state the obvious, circuit courts have subject matter jurisdiction over contract disputes," *Pure Presbyterian Church of Washington*, 296 Va. at 56, and exercise that authority "[u]nless ousted of jurisdiction by law[.]" *John Stewart Walker, Inc.*, 214 Va. at 530. "Thus, a circuit court has jurisdiction over a common law contract claim unless a provision of the Constitution or an enactment of the General Assembly strips it of that authority." *Ashland, LLC*, 301 Va. at 370.

Here, Verizon's claim, at its essence, is a contract claim. A determination of which party ultimately is responsible to pay for the relocation of Verizon's facilities turns on the interpretation of various agreements entered into by the parties, including, but not limited to,

5

VDOT's permit allowing Verizon to locate facilities within VDOT's rights-of-way, the comprehensive agreement between CBE and VDOT, and the agreement between CBE and Lane.

Although Verizon has characterized its claims as a "statutory action," its petition below confirms the contractual nature of its claims.[2] Verizon expressly requested that the Commission "issue a declaratory judgment that [CBE] or Lane . . .—whichever entity is ultimately responsible *by agreement or contract* to pay for utility relocation costs under the 495 Next Project—has the statutory obligation under Code § 33.2-1815(B) to pay or otherwise reimburse Verizon for the full amount of their utility relocation costs." (Emphasis added.) Furthermore, in advancing its position that the Commission should declare CBE responsible for the relocation costs, Verizon alleged that "[a]ccording to the Comprehensive Agreement, as between [CBE] and VDOT, [CBE] is *contractually responsible* for paying all utility relocation costs for the 495 NEXT Project." (Emphasis added.) In advancing its alternative theory that Lane was responsible for the relocation costs, Verizon alleged that "Lane . . . must pay the utility relocation costs to the extent *it agreed, under a separate contract with [CBE]*, to pay or otherwise reimburse [CBE] for such costs." (Emphasis added.) Simply put, Verizon's claim is based on the interpretation and enforcement of contractual rights and obligations, and thus, sounds in contract.

As noted above, the general rule is that trial courts and not the Commission exercise jurisdiction over such contractual claims. That general rule, however, is subject to exceptions created by the General Assembly. *See* Va. Const. art. IX, § 2 (providing that the Commission

_____

[2] In pertinent part and as detailed below, the statute on which Verizon ultimately relies assigns responsibility for the relocation costs to "the private entity or any other person *contractually responsible therefor under the interim or comprehensive agreement or under any other contract, license, or permit*." Code § 33.2-1815(B) (emphasis added).

6

has "such other powers and duties not inconsistent with this Constitution as may be prescribed by law"); *Ashland, LLC*, 301 Va. at 369.

Verizon contends that the provisions of the PPTA provide just such an exception to the general rule and vest jurisdiction over the "who pays" question in the Commission. For the reasons that follow, we disagree.

C. The PPTA does not grant jurisdiction to the Commission to determine which party pays for the relocation of Verizon's facilities caused by the 495 NEXT Project

First enacted in 1995, the PPTA represents an attempt by the General Assembly to address an existing "public need for timely development and/or operation of transportation facilities within the Commonwealth that" was not being "wholly satisfied by [then] existing methods of procurement in which qualifying transportation facilities are developed and/or operated[.]" Code § 33.2-1801(A)(1). Accordingly, the PPTA seeks "to encourage investment in the Commonwealth by private entities that facilitates the development and/or operation of transportation facilities when such investment is in the best interest of the public" and to grant "public and private entities . . . the greatest possible flexibility in contracting with each other for the provision of the public services that are the subject of this chapter." Code § 33.2-1801(C).

In establishing the manner in which PPTA projects are to be originated and carried out, the General Assembly elected to assign to the Commission certain matters to decide. *See generally* Code §§ 33.2-1800, 33.2-1814, 33.2-1815, & 33.2-1821. Central to Verizon's argument here are the references to the Commission contained in Code §§ 33.2-1815 & 33.2-1821.

Recognizing that it was possible if not likely that PPTA projects would involve the need to cross or relocate utility lines, the General Assembly adopted Code § 33.2-1815 to address such

7

instances.  Of particular note, Code § 33.2-1815(B) provides that, if the private entity and an

affected utility are

> unable to agree upon a plan for the crossing or relocation, the
> Commission may determine the manner in which the crossing or
> relocation is to be accomplished and any damages due arising out
> of the crossing or relocation.  The Commission may employ expert
> engineers who shall examine the location and plans for such
> crossing or relocation, hear any objections and consider
> modifications, and make a recommendation to the Commission.  In
> such a case, the cost of the experts is to be borne by the private
> entity.  Any amount to be paid for such crossing, construction,
> moving, or relocation of facilities shall be paid for by the private
> entity or any other person contractually responsible therefor under
> the interim or comprehensive agreement or under any other
> contract, license, or permit.  The Commission shall make a
> determination within 90 days of notification by the private entity
> that the qualifying transportation facility will cross utilities subject
> to the Commission's jurisdiction.

In turn, Code § 33.2-1821 provides that "[t]he Commission shall have exclusive jurisdiction to

adjudicate all matters specifically committed to its jurisdiction by" the PPTA.

To determine whether Verizon is correct that these provisions vested the Commission

with jurisdiction to decide the question of who is responsible to pay the costs of the utility

relocations caused by the 495 NEXT Project, we must engage in statutory interpretation.  When

doing so, our charge is a limited one.

Our task "is to ascertain and give effect to legislative intent, as expressed by the language

used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)

(quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)) (internal quotation marks

omitted).  "Under basic rules of statutory construction, we determine the General Assembly's

intent from the words contained in the statute[,]" *Williams v. Commonwealth*, 265 Va. 268, 271

(2003), limiting our inquiry to "what the statute says and not . . . what we think it should have

said." *Amerson*, 281 Va. at 421 (quoting *Virginian-Pilot Media Cos., LLC v. Dow Jones & Co.*,

8

280 Va. 464, 468-69 (2010)) (internal quotation marks omitted).  Accordingly, we may not "add[] language to or delet[e] language from a statute[,]" *Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706 (2012), because doing so represents an impermissible attempt "to rewrite the statute under the subtle guise of judicial interpretation." *Commonwealth v. Hall*, 297 Va. 143, 148 (2019) (quoting *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 278, (2016)) (internal quotation marks omitted).

Furthermore, our interpretation does not turn on "the public policy implications associated with" the words chosen by the General Assembly because "[t]he legislature is the author of public policy[,]" and thus, "[w]e may not extend the meaning of a statute simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used." *Prease v. Clarke*, 302 Va. ___, ___, 888 S.E.2d 758, 762-63 (2023) (internal citations and quotation marks omitted).  Finally, when the legislative enactment addresses an area with a well-established legal foundation, we may "consider [those] background principles . . . , even if those principles are not mentioned in the . . . statute" expressly.  *Commonwealth v. McBride*, No. 220715, 302 Va. ___, ___, ___ S.E.2d ___, ___, 2023 WL 6885058, at *2 (Va. Oct. 19, 2023).

Applying these principles to the five sentences that compose Code § 33.2-1815(B), we conclude that it does not vest the Commission with authority to determine who must pay the costs associated with Verizon's relocation of the utility facilities at issue.

From the plain text of Code § 33.2-1815(B), three of the five sentences expressly and specifically grant the Commission jurisdiction or otherwise direct how the Commission exercises that authority.  The first sentence provides that, when the private entity and the utility cannot agree regarding the relocation of the utility facilities affected by a PPTA project, it is "*the*

9

*Commission* [that] determine[s] the manner in which the crossing or relocation is to be accomplished and any damages due arising out of the crossing or relocation." (Emphasis added.) Similarly, the second sentence, which addresses the manner in which the Commission can exercise the jurisdiction granted by the first sentence, expressly and specifically references the Commission, providing that "*[t]he Commission* may employ expert engineers who shall examine the location and plans for such crossing or relocation, hear any objections and consider modifications, and make a recommendation to the Commission." (Emphasis added.) The fifth sentence also expressly and specifically references the Commission, providing that "*[t]he Commission* shall make a determination within 90 days of notification by the private entity that the qualifying transportation facility will cross utilities subject to the Commission's jurisdiction." (Emphasis added.) By including the express and specific references to the Commission in these three sentences, the General Assembly evinced its intention to vest the Commission with the jurisdiction to resolve the specific disputes referenced in the sentences and directed the manner in which the Commission could exercise that grant of authority.

Notably absent from the fourth sentence of Code § 33.2-1815(B), which addresses who is responsible for the costs of any relocations, is any reference, let alone an express and specific reference, to the Commission.[3] The sentence reads: "Any amount to be paid for such crossing, construction, moving, or relocation of facilities shall be paid for by the private entity or any other person contractually responsible therefor under the interim or comprehensive agreement or under any other contract, license, or permit." The lack of a reference to the Commission, especially

_____

[3] The third sentence of Code § 33.2-1815(B) does not grant any authority to the Commission. Rather, it expressly and specifically assigns to the "private entity" responsibility for paying for any experts hired by the Commission to assist it in determining the manner of a utility relocation and any associated damages.

given the multiple express and specific references elsewhere in Code § 33.2-1815(B), at a minimum, suggests that the General Assembly did not intend for the fourth sentence to grant the Commission jurisdiction that it otherwise did not possess. *Cf. Halifax Corp. v. First Union Nat. Bank*, 262 Va. 91, 100 (2001) (recognizing that "when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional").

Our conclusion that the fourth sentence does not vest jurisdiction in the Commission to decide the "who pays" question finds further support in both the PPTA itself and the well-recognized and longstanding principle that trial courts and not the Commission have jurisdiction over contract claims. Code § 33.2-1821, part of the PPTA, provides that "[t]he Commission shall have exclusive jurisdiction to adjudicate all matters *specifically committed to its jurisdiction* by" the PPTA. (Emphasis added.) As noted above, nothing in the text of Code § 33.2-1815(B) commits, let alone specifically commits, the "who pays" question to the Commission for determination.

Furthermore, because of the historical understanding of the jurisdiction of trial courts vis-à-vis the Commission, we have eschewed implying an expansion of the Commission's jurisdiction to address contract cases simply because the dispute bears some relation to a matter over which the Commission does exercise jurisdiction. As we observed in *John Stewart Walker, Inc.*, the fact "[t]hat the Commission has been granted explicit jurisdiction to exercise one of its limited powers over a particular subject matter does not mean that it has been granted implicit jurisdiction to exercise the same power over another subject matter[.]" 214 Va. at 533.

Finally, given how well established it is that trial courts and not the Commission have jurisdiction to resolve contractual disputes, we interpret Code § 33.2-1815(B) in light of that

"background principle[]," *McBride*, No. 220715, 302 Va. at \_\_\_, S.E.2d at \_\_\_, 2023 WL 6885058, at \*2, and conclude that, if it had intended to alter the general rule, the General Assembly would have done so expressly rather than relying on silent implication.

Accordingly, the Commission correctly concluded that it lacked subject matter jurisdiction over Verizon's petition.[4]

### III. Conclusion

For the foregoing reasons, the Commission did not err in concluding that it lacked subject matter jurisdiction over Verizon's petition seeking a declaration of who was responsible for the payment of the relocation costs associated with the utility relocations caused by the 495 NEXT Project. Accordingly, we affirm the judgment of the Commission.

*Affirmed*.

---

[4] In an alternative holding set out in a footnote, the Commission asserted that the General Assembly's use of the word "may" in portions of Code § 33.2-1815(B) meant that its jurisdiction in the matter, if it had any, was discretionary, and it chose not to exercise any such discretionary jurisdiction. Verizon assigned error to this alternative holding. Because addressing the alternative holding is unnecessary to our resolution of the appeal, we decline to reach the question, and thus, offer no opinion on whether or not the Commission is correct that any jurisdiction granted by Code § 33.2-1815(B) is discretionary. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (recognizing that "the doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available") (internal citation and alteration omitted).